UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Steven M. Hamilton,

      Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**
Civil No. 15-2520 ADM/FLN

Allstate Insurance Company,

      Defendant.

_____

Robert N. Edwards, Esq., Robert N. Edwards, Chrd., Anoka, MN, on behalf of Plaintiff.

Patrick J. Larkin, Esq., Lind Jensen Sullivan & Peterson, PA, Minneapolis, MN, on behalf of Defendant.

_____

## I. INTRODUCTION

On November 17, 2015, the undersigned United States District Judge heard oral argument on Defendant Allstate Insurance Company's ("Allstate") Motion for Summary Judgment [Docket No. 17] and Plaintiff Steven M. Hamilton's ("Hamilton") Cross Motion for Summary Judgment [Docket No. 25]. For the reasons set forth below, Allstate's motion is granted and Hamilton's motion is denied.

## II. BACKGROUND

On September 26, 2013, Hamilton and his then girlfriend Sharon Dahlquist were returning to Minnesota from a failed romantic getaway in Wisconsin. Edwards Aff. [Docket No. 14] Ex. C ("Hamilton EUO") 9:6–14. Hamilton, the driver, was injured in a crash after Dahlquist negligently grabbed the steering wheel from her passenger seat. Am. Compl. [Docket No. 16] ¶¶ 1, 2; Hamilton Aff. [Docket No. 15] ¶ 2. The vehicle was owned and insured by Dahlquist. Hamilton was able to recover against Dahlquist's insurer for the limits of her policy.

Am. Compl. ¶ 2.  The settlement, however, failed to compensate Hamilton to the full extent of his medical expenses.  Accordingly, Hamilton initiated this suit seeking to recover medical expense and under insured motorist ("UIM") benefits from the insurance policy of his brother, Craig Hamilton ("Craig").  Id. ¶ 4.  Craig is the only named insured on his policy.  Larkin Aff. [Docket No. 23] Ex. 1 (the "Policy").  Hamilton nevertheless maintains that he is entitled to recover under Craig's policy because, at the time of his injury, Hamilton was a resident relative of Craig's household.

> The Policy provides UIM coverage, and the insuring agreement states that Allstate will:
>
> pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an insured or underinsured auto.  Bodily injury must be caused by accident and arise out of the ownership, maintenance or use of an uninsured or underinsured auto.

Policy at 14.  The Policy provides UIM coverage for three enumerations of "Insured Persons," the first of which is "You and any resident relative."  Id. at 15 (emphasis added).

Hamilton's residence history in the years prior to the crash was fluid.  After selling his Andover home around 2008, Hamilton lived in Coon Rapids for about seven or eight months before moving to Anoka.  Hamilton EUO 53:1–54:16.  Hamilton lived in Anoka for roughly two years with a woman named Tanya, until around November 2011.  Id. 53:1–7; 58:4–7.  After leaving Tanya's residence, Hamilton moved his possessions into Craig's home in Isanti.  Id. 59:11–16.  While the timing is not entirely clear, Hamilton moved into Dahlquist's Coon Rapids residence sometime near the end of 2011 or early 2012, shortly after they began dating.  Id. 48:11–49:22.  Hamilton did not move his belongings from Craig's home into Dahlquist's home.  Id. 59:17–24.

Hamilton described his relationship with Dahlquist as "tumultuous" and very off-again-

on-again. Id. 49:3–12.  If the relationship was going well, Hamilton would remain with Dahlquist in Coon Rapids.  When things with Dahlquist soured, Hamilton would either stay with Craig in Isanti or with his other brother, Scott, in Coon Rapids until things "cooled off."  Id. 20:15–21:3.  One of these "off" times was in November 2012, when Hamilton moved in with Craig in Isanti.  Id. 22:21–23:9.  Rather than paying rent, Hamilton performed yard work and household chores at Craig's home.  Id. 32:20–23.  Hamilton would also occasionally work odd jobs for his sister to generate a small income he then paid to Craig.  Id. 31:21–32:19.

Hamilton remained in Craig's Isanti home until Labor Day 2013, when Hamilton and Dahlquist reconciled.  Id. 23:5–9.  For three or four weeks prior to the crash, unless they were on a weekend getaway, Hamilton was living with Dahlquist in her Coon Rapids residence.  Id. 21:13–18.

Around November 2011, Hamilton was diagnosed with Amyotrophic Lateral Sclerosis, or ALS.  Id. 17:20–21.  Prior to the crash, Hamilton received Medical Assistance through Anoka County until February 2014, when he switched his benefits to Isanti County.  Id. 23:24–24:7.  At the time of the crash, Hamilton, using Scott's Anoka County address, received his health insurance payments through Anoka County.  Id. 24:10–17.  This was also the address where Hamilton received mail such as his notifications of ALS related appointments at Hennepin County Medical Center.  Id. 25:1–6.  At the time of the crash, Hamilton testified he filled his prescriptions at either a CVS or Walgreens in Coon Rapids.  Id. 26:20:27:10.

When the crash occurred, Hamilton was in possession of two driver's licenses.  Id. 51:3–10.  One license listed Scott's Coon Rapids residence and the other listed a former residence in Anoka.  Id. 20:3–7; 50:23–51:6.  The license with the Anoka address was old;

3

sometime before the crash Hamilton changed the address on his license to Scott's house to redirect his mail there. Id. 51:11–23. When Hamilton was transported from the scene of the crash, the transport records indicate the Anoka residence as Hamilton's address. Id. 50:14–22. Hamilton reasons this information came from the old license in his pocket when the crash occurred. Id. 51:24–52:4.

The parties do not dispute the events that occurred prior to the crash. The disagreement stems from whether or not the events demonstrate that Hamilton was living at Craig's residence on the date of the crash.

### III.  DISCUSSION

**A.  Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). However, the nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

If evidence sufficient to permit a reasonable jury to return a verdict in favor of the nonmoving party has been presented, summary judgment is inappropriate. Id. However, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment. . . . Instead, 'the dispute must be outcome determinative under

prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citation omitted). However, "summary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support a complaint." Krenik, 47 F.3d at 959.

**B. Resident Relative**

Hamilton argues that at the time of the crash, he was a resident of Craig's Isanti residence and is thus entitled to coverage under the Policy. Allstate disagrees, maintaining that Hamilton was not residing in Craig's residence at the time of the crash.

State law governs the interpretation of insurance policies. Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Ind., 346 F.3d 1160, 1164 (8th Cir. 2003) (citing Capitol Indem. Corp. v. Haverfield, 218 F.3d 872, 875 (8th Cir. 2000). In Minnesota, interpreting an insurance contract is a question of law and absent ambiguity, terms are accorded their plain and ordinary meaning. Quade v. Secura Ins., 814 N.W.2d 703, 705 (Minn. 2012). Although typically a question of fact, a court may determine whether a person resided with an insured as a matter of law if the facts are undisputed. French v. State Farm Mut. Auto Ins. Co., 372 N.W.2d 839, 841 (Minn. Ct. App. 1985). In deciding residency, "each case turns on its own specific set of facts." Wood v. Mut. Servs. Cas. Ins. Co., 415 N.W.2d 748, 750 (Minn. Ct. App. 1987) (citing cases).

In Fireman's Ins. Co. of Newark, N.J. v. Viktora, the Minnesota Supreme Court adopted a three-factor analysis for determining whether a person is a resident or member of the named insured's household:

> 1) Living under the same roof; (2) in a close, intimate and informal relationship; and (3) where the intended duration is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider this relationship [ ] in contracting

about such matters as insurance or in their conduct in reliance thereon.

318 N.W.2d 704, 706 (Minn. 1982) (quoting Pamperin v. Milwaukee Mut. Ins. Co., 197 N.W.2d 783, 788 (Wis. 1972) (internal quotation marks omitted)). No one factor is controlling; all three factors "merge to create either a portrait of a relationship akin to household membership or one more transient in character." State Farm Fire & Cas. Co. v. Lawson, 406 N.W.2d 20, 22 (Minn. Ct. App. 1987). "A person resides in the same household with the named insured if that person's home is usually in the same family unit, even though temporarily living elsewhere." North Star Mut. Ins. Co. v. State Farm Mut. Ins. Co., No. A14-48, 2014 WL 3892528, at *3 (Minn. Ct. App. Aug. 11, 2014) (quoting Minn. Stat. § 65B.43, subd. 5 (2012)).

The first two factors are generally satisfied by finding that the person seeking coverage and the named insured "dwell together as a family under the same roof." Viktora, 318 N.W.2d at 707 (citing Van Overbeke v. State Farm Mut. Auto. Ins. Co., 227 N.W.2d 807, 810 (1975)). "The third [Viktora] factor provides the framework for analyzing the relationship of the persons to each other and to the household. It asks whether the nature and duration of the relations are such that it would be reasonable to conclude that the parties considered the relationship in contracting for insurance." Johnson v. Am. Econ. Ins. Co., 419 N.W.2d 126, 129 (Minn. Ct. App. 1988).

The first two factors resolve in favor of Allstate. Although he had in the past and he would in the future, Hamilton was not dwelling with Craig under Craig's roof at the time of the crash. But for weekend getaways and similar occurrences, Hamilton was living with Dahlquist in the weeks preceding the day of the crash. Regarding the third factor, the Policy was in effect

from September 26, 2013, to March 26, 2014.[1] Hamilton was living with Dahlquist for over three weeks prior to the effective date of the Policy. There is no indication in the record that Craig considered his brother when he contracted for insurance with Allstate. Under the Viktora factors, Hamilton was not a resident of Craig's household.

That, however, does not entirely resolve the issue, as Minnesota courts have identified additional factors relevant to determining residency: "(1) the age of the person; (2) whether a separate residence is established; (3) self-sufficiency of the person; (4) frequency and the duration of the stay in the family home; and (5) intent to return." Frey v. United Servs. Auto. Ass'n, 743 N.W.2d 337, 345 (Minn. Ct. App. 2008) (citing Wood, 415 N.W.2d at 750). These factors further support the conclusion that Hamilton was not a resident of Craig's household at the time of the crash.

Hamilton is a 52 year old, self-sufficient man. Even though he was living with ALS, Hamilton maintained and managed his own affairs; the record is silent as to any other person assisting Hamilton with his finances or his medical condition. In the years following the sale of his single-family home to Scott, Hamilton maintained separate residences at different locations in Anoka County. In late 2012, after leaving Dahlquist's residence, Hamilton's residence changed to Craig's home in Isanti County. Hamilton's relatively short residence with Craig—approximately nine months length—terminated around Labor Day 2013, when Hamilton resumed his relationship with Dahlquist and returned to her Coon Rapids home. Even though their relationship history included periods of separation, the record does not support concluding that Hamilton's return to the Dahlquist residence was intended to be temporary. To the contrary,

---

[1] It appears merely coincidental that the Policy went into effect the same day as the crash.

sharing a household for weeks except for romantic getaways (as Hamilton characterized the weekend of the crash) suggests Hamilton's intention to reside with Dahlquist.[2]

Moreover, specific evidence of record cuts against finding Hamilton as being a resident of Craig's household. Craig's address was neither listed on Hamilton's driver's licenses nor connected in any way to Hamilton's medical mailings and state sponsored benefits. With respect to the driver's licenses, the record reflects that Hamilton used Scott's and Tanya's (the woman Hamilton lived with for about two years prior to the crash) addresses. A driver's license is a legally significant document that, in addition to conferring the individual with the permission to legally operate a motor vehicle, often serves as the holder's primary source of identification.[3] Turning to the address Hamilton provided to his medical provider and to the State, Hamilton is consistent that, before the crash, Craig's address was never used for either. When he was diagnosed with ALS in 2011, Hamilton furnished Scott's Coon Rapids address to his primary care provider and he was receiving Medical Assistance through Anoka County. Hamilton understood that his public benefit from Anoka County could be questioned if his documentation provided an Isanti County residence. Hamilton's failure to take any steps to change his public benefits from Anoka County to Isanti before the crash indicates that his time in Craig's home in 2013 was not intended to be permanent. The only documentary evidence of record strongly supports that Hamilton considered his residence to be in Anoka County at the time of the crash.

---

[2] Hamilton's storage of some possessions at Craig's Isanti home is the only evidence of Hamilton's arguable intention to return to Craig's residence. Without more, retaining personal belongings at Craig's house is not enough to establish that Steven resided in Craig's residence.

[3] Indeed, the crew who transported Hamilton from the crash scene reported Hamilton's address as the one reflected on his driver's license.

It was not until over three months after the crash that Hamilton started receiving Medical Assistance from Isanti County. At about this same time Hamilton switched from primarily using a pharmacy located in Anoka county to one in Isanti County.[4] While these changes of indicia of residence may suggest Hamilton's intention to reside in Isanti County, they all occurred only after the crash and do not support Hamilton's argument that he was residing at Craig's home at the time of the crash. Based on this record, Hamilton was not residing at Craig's residence at the time of the crash.[5]

---

[4] DMV records also reflect that in a May 8, 2015 driver's license application, Hamilton provided Craig's Isanti address. Larkin Aff. [Docket No. 33] Ex. 9.

[5] In his affidavit, Hamilton stated that his residence at the time of the crash was Craig's Isanti home. However, this testimony does not defeat the determination that he was not residing at Craig's residence at the time of the crash. See Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006) (noting that summary judgment is not defeated by a self-serving affidavit and declining to draw favorable inferences from an affidavit that stated the affiant's subjective views).

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Allstate Insurance Company's Motion for Summary Judgment [Docket No. 17] is **GRANTED**;

2. Plaintiff Steven M. Hamilton's Motion for Summary Judgment [Docket No. 25] is **DENIED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

 s/Ann D. Montgomery 
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  December 22, 2015.